UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
SHLOMO GREIFMAN, Individually and On
Behalf of All Others Similarly Situated,

                           Plaintiff,           **OPINION & ORDER**

    - against -                           No. 20-CV-1781 (CS)

CLIENT SERVICES, INC.,

                           Defendant.
----------------------------------------------------------------x

<u>Appearances</u>:

Jonathan M. Cader
Craig B. Sanders
David M. Barshay
Barshay Sanders PLLC
Garden City, New York
*Counsel for Plaintiff*

Brendan H. Little
Lippes Mathias Wexler Friedman LLP
Buffalo, New York
*Counsel for Defendant*

<u>Seibel, J.</u>

      Before the Court is Defendant's Motion for Judgment on the Pleadings.  For the

following reasons, the motion is GRANTED.

**I.**      **<u>BACKGROUND</u>**

      For the purposes of this motion, I accept as true the facts, but not the conclusions, set

forth in Plaintiff's Class Action Complaint.  (Doc. 1 ("Compl.").)

      **A.**      **<u>Facts</u>**

      This Fair Debt Collection Practices Act ("FDCPA") dispute arises out of a debt collection

letter ("the Letter" or "Defendant's Letter") – attached as an Appendix to this Opinion and Order

– that Defendant Client Services, Inc. ("CSI") sent to Plaintiff on March 4, 2019.  (Compl. ¶ 27; *id.* Ex. 1.)[1]  Defendant sent Plaintiff the Letter because Plaintiff allegedly owes a "debt" as defined by the FDCPA that is in default.  (*Id.* ¶¶ 23, 24, 26.)

The Letter constitutes a "communication" under the FDCPA and "was the initial written communication Plaintiff received from Defendant concerning the alleged [d]ebt."  (*Id.* ¶¶ 29-30.) In the top left corner of the Letter, underneath CSI's logo, CSI's physical office address – 3451 Harry S Truman Blvd., Saint Charles, MO 63301-4047 – is listed.  (*Id.* Ex. 1.)  The Letter identifies the current creditor as Capital One Bank (USA), N.A. immediately below that address and states the balance due.  (*Id.*)  In the top right corner CSI's office hours and phone number are set out, as well as the date of the letter.  Just below that, centered at the top of the Letter, in capital and bolded font, is the statement:  "NEW INFORMATION ON YOUR ACCOUNT." (*Id.*)  The Letter proceeds to state that CSI's client, "Capital One Bank (USA), N.A., has placed the above account with our organization for collections [*sic*]" and again lists the current balance.  (*Id.*)

> Immediately underneath this information is a validation notice, which provides:
>
> Unless you notify our office within thirty (30) days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid.  If you notify this office in writing within thirty (30) days from receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification.  If you request of this office in writing within thirty (30) days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

(*Id.*)  Immediately underneath the validation notice is a legal action notice, which provides:

---

[1] Plaintiff is a "consumer" under the FDCPA.  (*Id.* ¶¶ 6, 7).  Defendant is a corporation that "is regularly engaged, for profit, in the collection of debts allegedly owed by consumers." (*Id.* ¶¶ 9, 10.)  As such, Defendant is a "debt collector" under the FDCPA.  (*Id.* ¶ 11.)

Please note, we have many payment options that may meet your individual needs. If we are unable to arrange repayment, Capital One will send your account to an attorney in your state for possible legal action. Please note, no decision has been made to take legal action against you at this time. I want to help you avoid any possible legal action. Please call me at 877-665-3303 for more information. I look forward to working with you to resolve this balance.

(*Id.*)

Following these notices, the Letter specifies, in all capital letters, "This communication is from a debt collector. This is an attempt to collect a debt. Any information obtained will be used for that purpose." (*Id.*) Below that, again in all capital letters, the reader is referred to the back of the letter for "important rights and privileges which might apply to your state of residence." (*Id.*) The bottom third or so of the letter is a detachable payment coupon. On the upper left corner of the coupon, where a return address is customarily found, is a P.O. Box address: P.O. Box 1586, Saint Peters, MO 63376. (*Id.*) Below that – where it would show through if an envelope had a glassine window on the left side – is Plaintiff's name and address. (*Id.*) On the right side of the coupon – across from Plaintiff's address and in the spot where it would show through if an envelope had a glassine window on the right side – is the instruction "REMIT TO," with Defendant's name and office address on Harry S Truman Blvd. below it.

### B. <u>Procedural History</u>

Plaintiff filed a Class Action Complaint "individually and on behalf of all others similarly situated" on February 28, 2020, alleging that Defendant's Letter violated Plaintiff's rights under the FDCPA. (*Id.* ¶¶ 35-133.) Specifically, Plaintiff alleges violations of Sections 1692e and 1692g of Title 15 of the United States Code. Defendant filed an Answer on May 5, denying any such violation. (Doc. 7.) On June 4, Defendant requested "leave to file a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c)," (Doc. 12), which the Court granted at a pre-motion conference held on June 22. (Minute Entry dated June 22, 2020). At that conference, the

Court also granted Plaintiff leave to amend in advance of the motion.  (*Id.*)  Plaintiff did not amend.  The instant motion followed.

## II.   <u>LEGAL STANDARD</u>

The standard for assessing a motion for judgment on the pleadings pursuant to Rule 12(c) is the same as that for a Rule 12(b)(6) motion to dismiss.  *Patel v. Contemp. Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001); *see Accelecare Wound Ctrs., Inc. v. Bank of N.Y.*, No. 08-CV-8351, 2009 WL 2460987, at *4 (S.D.N.Y. Aug. 11, 2009).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555 (cleaned up).  While Federal Rule of Civil Procedure 8 "marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  *Iqbal*, 556 U.S. at 678-79.

In considering whether a complaint states a claim upon which relief can be granted, the court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and then determines whether the remaining well-pleaded factual allegations, accepted as true, "plausibly give rise to an entitlement to relief."  *Id.* at 679.

Deciding whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'" *Id.* (cleaned up) (quoting Fed. R. Civ. P. 8(a)(2)).

On a Rule 12(c) motion, the Court may ordinarily only consider "the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (quoting *Roberts v. Babkiewicz*, 582 F.3d 418, 419 (2d Cir. 2009)). "A complaint is also deemed to include any . . . materials incorporated in it by reference, and documents that, although not incorporated by reference, are integral to the complaint." *Id.* (cleaned up). A document is "integral" if "the complaint relies heavily upon its terms and effect." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (cleaned up). Along with its motion, Defendant filed a declaration from a custodian of records for CSI, Defendant's Letter, "[t]he type of envelope that [the Letter] was sent in, and "[t]he type of enclosed envelope sent with [the Letter]." (*See* Doc. 17-1 at 1; *id.* Exs. 1A-C.) "The Court cannot, however, consider materials outside the pleadings on a Rule 12(c) motion." *Heil v. Lebow*, No. 91-CV-8656, 1993 WL 15032, at *2 (S.D.N.Y. Jan. 13, 1993). I therefore do not consider the declaration or envelopes.

Although Defendant describes its motion as arising under Rule 12(c), part of its argument is that Plaintiff lacks standing to sue. Such a motion arises under Rule 12(b)(1) because it amounts to a challenge to the court's subject matter jurisdiction. *Am. Tissue, Inc. v. Arthur Andersen, L.L.P.*, 275 F. Supp. 2d 398, 403 (S.D.N.Y. 2003). Under Rule 12(b)(1), a district

court may properly dismiss an action for lack of subject matter jurisdiction "if the court 'lacks the statutory or constitutional power to adjudicate it.'" *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.A.R.L.*, 790 F.3d 411, 416-17 (2d Cir. 2015) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)).  "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Makarova*, 201 F.3d at 113.  In determining whether subject matter jurisdiction exists, the district court "must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff, but jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (cleaned up), *aff'd*, 561 U.S. 247 (2010).  The Court may also "rely on evidence outside the complaint" when deciding a Rule 12(b)(1) motion. *Cortlandt St. Recovery Corp.*, 790 F.3d at 417.

## III.   DISCUSSION

### A.   Standing

Article III of the Constitution limits a federal court's jurisdiction to actual "cases" and "controversies."  U.S. Const. art. III, § 2; *see Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).  "Constitutional standing is the threshold question in every federal case, determining the power of the court to entertain the suit." *Leibovitz v. N.Y.C. Transit Auth.*, 252 F.3d 179, 184 (2d Cir. 2001) (cleaned up).  There are three constitutional standing requirements that every plaintiff must satisfy in order to invoke the jurisdiction of the federal courts:  (1) "an injury in fact (*i.e.*, a concrete and particularized invasion of a legally protected interest)"; (2) "causation (*i.e.*, a fairly traceable connection between the alleged injury in fact and the alleged conduct of the defendant)"; and "(3) redressability (*i.e.*, it is likely and not merely speculative that the plaintiff's

injury will be remedied by the relief plaintiff seeks in bringing suit)." *Sprint Commc'ns Co. v. APCC Servs.*, Inc., 554 U.S. 269, 273-74 (2008) (cleaned up).  These minimum requirements to invoke jurisdiction exist in all cases, separate and apart from whatever statutory standing requirements may exist in the laws under which a plaintiff has filed suit.  *See All. for Env't. Renewal v. Pyramid Crossgates Co.*, 436 F.3d 82, 85-86 (2d Cir. 2006).  The party invoking federal jurisdiction bears the burden of establishing that it has standing to do so.  *Lujan*, 504 U.S. at 561.

These requirements are somewhat less rigorous in cases in which the plaintiff claims he has sustained a procedural injury.  "The person who has been accorded a procedural right to protect his concrete interests can assert the right without meeting all the normal standards for redressability and immediacy."  *Lujan*, 504 U.S. at 572 n.7.  "To show redressability, plaintiffs alleging procedural injury must show only that they have a procedural right that, if exercised, could protect their concrete interests."  *Nat. Res. Def. Council v. Fed. Hous. Fin. Agency*, 815 F. Supp. 2d 630, 637 (S.D.N.Y. 2011) (cleaned up), *aff'd sub nom. Town of Babylon v. Fed. Hous. Fin. Agency*, 699 F.3d 221 (2d Cir. 2012).  "Unlike redressability, however, the requirement of injury in fact is a hard floor of Article III jurisdiction that cannot be removed by statute."  *Summers v. Earth Island Inst.*, 555 U.S. 488, 497 (2009).  In other words, "deprivation of a procedural right without some concrete interest that is affected by the deprivation – a procedural right *in vacuo* – is insufficient to create Article III standing."  *Id.* at 496.

The only constitutional standing requirement that Defendant argues Plaintiff has not satisfied is the injury-in-fact requirement.  (Doc. 18 ("D's Mem.") at 5-7; Doc. 20 at 1-3.)  To establish injury in fact, a plaintiff must show "an invasion of a legally protected interest which is concrete and particularized."  *Lujan*, 504 U.S. at 560 (cleaned up).  A particularized injury is one

that "affect[s] the plaintiff in a personal and individual way." *Id.* at 560 n.1.  A "concrete" injury

is one that is "real" and not "abstract."  *Spokeo v. Robins*, 136 S. Ct. 1540, 1548 (2016).

Constitutional standing "requires a concrete injury even in the context of a statutory

violation." *Id.* at 1549.  The risk of real harm can satisfy the requirement of concreteness in

certain circumstances.  *Id.* (citing *Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013)).  Where

Congress has conferred a procedural right to protect a concrete interest, Defendant's violation of

that procedure "may demonstrate a sufficient 'risk of real harm' to the underlying interest to

establish concrete injury without 'need [to] allege any *additional* harm beyond the one Congress

has identified.'"  *Strubel v. Comenity Bank*, 842 F.3d 181, 189 (2d Cir. 2016) (quoting *Spokeo*,

136 S. Ct. at 1549) (alteration and emphasis in original).

The Second Circuit has held that §§ 1692e and 1692g both "protect an individual's

concrete interests, so that an alleged violation of these provisions satisfies the injury-in-fact

requirement of Article III."  *Cohen v. Rosicki, Rosicki & Assocs., P.C.*, 897 F.3d 75, 81 (2d Cir.

2018); *see Zirogiannis v. Seterus, Inc.*, 707 Fed. App'x 724, 727 (2d Cir. 2017) (summary order);

*Papetti v. Does*, 691 Fed. App'x 24, 26 (2d Cir. 2017) (summary order).  Plaintiff alleges that

Defendant violated these provisions by overshadowing Plaintiff's validation rights with legal

threats and failing to adequately convey how Plaintiff could dispute the alleged debt.  (Compl.

¶¶ 62-67, 109-114; Doc. 19 ("P's Opp.") at 2.)  Accepting these allegations as true, Defendant's

conduct posed a risk of hindering the exercise of Plaintiff's right to seek validation of or dispute

the alleged debt.  Under the law of this Circuit, this constitutes a "risk of real harm" to Plaintiff

in particular, sufficient to establish an injury in fact.  *See Cohen*, 897 F.3d at 81; *Strubel*, 842

F.3d at 189.  While Defendant cites contrary authority in other circuits, this Court is bound by

Second Circuit precedent.  Accordingly, Plaintiff has established Article III standing to bring this suit.

### B.   The Fair Debt Collection Practices Act

Plaintiff argues that Defendant's Letter overshadows and is inconsistent with Plaintiff's rights under §§ 1692g and 1692e of the FDCPA, in two separate counts.  (Compl. ¶¶ 35-132.)  I will first outline these sections of the FDCPA and then address each of Plaintiff's claims in turn.

### 1.   Section 1692g

Section 1692g(a) mandates that in its initial communication with a consumer (or within five days of it), a debt collector must send the consumer a written notice containing, among other things, a statement that the consumer has thirty days to notify the debt collector in writing that the consumer disputes the debt, whereupon the debt collector will obtain verification of the debt and mail it to the consumer.  15 U.S.C. § 1692g(a)(4).  This language, "commonly referred to as a 'validation notice,' gives the consumer the information necessary to challenge the debt allegedly owed before making payment."  *Russell v. Equifax A.R.S.*, 74 F.3d 30, 32-33 (2d Cir. 1996).

"The thirty-day window is not a 'grace period'; in the absence of a dispute notice, the debt collector is allowed to demand immediate payment and to continue collection activity."  *Jacobson v. Healthcare Fin. Servs., Inc.*, 516 F.3d 85, 89 (2d Cir. 2008); *see Foti v. NCO Fin. Sys., Inc.*, 424 F. Supp. 2d 643, 660 (S.D.N.Y. 2006) ("[D]uring the validation period, the debtor's right to dispute coexists with the debt collector's right to collect.") (cleaned up).  But § 1692g(b) provides, in part, that "[a]ny collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor."  This means that a debt

collector has "the obligation, not just to convey the [validation notice], but to convey it clearly."
*Jacobson*, 516 F.3d at 90. Accordingly, the Second Circuit has held that a debt collector violates
§ 1692g "even if the collector includes an accurate validation notice, if that notice is
overshadowed or contradicted by other language in communications to the debtor." *Id.* "A
notice overshadows or contradicts the validation notice if it would make the least sophisticated
consumer uncertain as to her rights." *Id.* (cleaned up).

"The least sophisticated consumer test is an objective inquiry directed toward ensuring
that the FDCPA protects all consumers, the gullible as well as the shrewd." *Easterling v.
Collecto, Inc.*, 692 F.3d 229, 234 (2d Cir. 2012) (*per curiam*) (cleaned up). "The hypothetical
least sophisticated consumer does not have the astuteness of a 'Philadelphia lawyer' or even the
sophistication of the average, everyday, common consumer, but is neither irrational nor a dolt."
*Ellis v. Solomon and Solomon, P.C.*, 591 F.3d 130, 135 (2d Cir. 2010) (cleaned up).
Consequently, this standard does not allow for unreasonable, bizarre, or idiosyncratic
interpretations of collection notices, and "even the least sophisticated consumer can be presumed
to possess a rudimentary amount of information about the world and a willingness to read a
collection notice with some care." *Id.* (cleaned up); *see Weber v. Comput. Credit, Inc.*, 259
F.R.D. 33, 38 (E.D.N.Y. 2009) ("It is assumed that even the least sophisticated consumer will
read a debt collection letter in its entirety."). The least sophisticated consumer inquiry "is to be
conducted with a recognition that confusion can occur in a myriad of ways, such as when a letter
visually buries the required validation notice, contains logical inconsistencies, fails to explain an
apparent inconsistency, or presents some combination of these (or similar) vices." *Pollard v.
Law Off. of Mandy L. Spaulding*, 766 F.3d 98, 104 (1st Cir. 2014). "[B]ecause the least
sophisticated consumer standard is objective, the determination of how the least sophisticated

consumer would view language in a defendant's collection letter is a question of law that the Court may resolve on a motion to dismiss" or a motion for judgment on the pleadings. *Jones-Bartley v. McCabe, Weisberg & Conway, P.C.*, 59 F. Supp. 3d 617, 642 (S.D.N.Y. 2014) (cleaned up); *see Franzos v. Pinnacle Credit Servs. LLC*, 332 F. Supp. 2d 682, 685 (S.D.N.Y. 2004) ("[T]he Second Circuit has found that it is appropriate for district courts to treat judgments about the way in which the least sophisticated consumer would interpret a particular debt collection notice as questions of law.").

### 2.    Section 1692e

Section 1692e of the FDCPA contains sixteen subsections that "provide a nonexhaustive list of practices that fall within the statute's ban," *Bentley v. Great Lakes Collection Bureau*, 6 F.3d 60, 62 (2d Cir. 1993), including § 1692e(5), which prohibits "'[t]he threat to take any action that cannot legally be taken or that is not intended to be taken,'" *id.* (alteration in original) (emphasis omitted) (quoting 15 U.S.C. § 1692e(5)), and § 1692e(10), "a catch-all provision that bars '[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer,'" *Altman v. J.C. Christensen & Assocs., Inc.*, 786 F.3d 191, 194 (2d Cir. 2015) (alteration in original) (quoting 15 U.S.C. § 1692e(10)). "A validation notice is deceptive, and thus violates section 1692e(10), 'when it can be reasonably read to have two or more different meanings, one of which is inaccurate.'" *Beauchamp v. Fin. Recovery Servs., Inc.*, No. 10-CV-4864, 2011 WL 891320, at *2 (S.D.N.Y. Mar. 14, 2011) (quoting *Russell*, 74 F.3d at 35). As with § 1692g, alleged violations of § 1692e(5) and (10) are evaluated under the least sophisticated consumer standard. *See id.* Indeed, "[t]he standard for determining a violation of § 1692e(10) is essentially the same as that for § 1692g." *Foti*, 424 F. Supp. 2d at 666-67 (collecting cases); *see Barrientos v. Law Offs. of Mark L. Nichter*, 76 F.

Supp. 2d 510, 513 (S.D.N.Y. 1999) ("Even if a defendant provides the requisite validation notice

under 1692g, it may still be liable under § 1692g and § 1692e(10) if it sends a . . .

communication within the validation period that 'overshadows or contradicts' such notice . . . .").

### 3.    Immediate or Imminent Threat

In his first claim, Plaintiff argues that the Letter is "reasonably susceptible to an

inaccurate reading by the least sophisticated consumer" in violation of § 1692e.  (Compl. ¶ 72;

*see id.* ¶¶ 73-74.)  Specifically, Plaintiff alleges that the least sophisticated consumer could read

the Letter as a threat of immediate or imminent legal action "even if she exercises her validation

rights," (*id.* ¶ 73), and that such threat overshadows and is inconsistent with Plaintiff's validation

rights in violation of § 1692g, (*id.* ¶¶ 62-67).

Plaintiff argues that the least sophisticated consumer could reasonably interpret the legal

action notice in the Letter as constituting a legal threat that overshadows the validation notice,

particularly because of how the two notices are juxtaposed.  (P's Opp. at 13-16; *see* Compl.

¶¶ 50-57, 62-64.)  Right after the validation notice, the legal action notice provides:  "Please

note, we have many payment options that may meet your individual needs.  If we are unable to

arrange repayment, Capital One will send your account to an attorney in your state for possible

legal action.  Please note, no decision has been made to take legal action against you at this time.

I want to help you avoid any possible legal action."  (Compl. Ex. 1.)  Plaintiff points to the

notification on the top of the Letter that states "new information on your account," and argues

that the least sophisticated consumer could interpret the "new information" to be that the creditor

had decided to pursue legal action if a payment was not made.  (*See* P's Opp. at 6.)  Such

interpretation is reasonable, Plaintiff argues, because the legal action notice was placed directly

underneath the validation notice, with no transitional language in between. (*See* P's Opp. at 6, 16.)

I disagree. Overshadowing occurs where the communication implies that "legal action has already been or is about to be initiated and can be averted from running its course only by payment," but "even where communications specifically refer to legal action, a threat does not exist where the references are couched in terms of mere possibility." *Sorel v. Cap. One Servs., LLC*, No. 11-CV-703, 2012 WL 3596487, at *6 (D. Conn. Aug. 20, 2012) (cleaned up). The least sophisticated consumer would not reasonably construe the legal action notice as threatening an imminent lawsuit. The legal action notice states in no uncertain terms that "no decision has been made to take legal action against you at this time. I want to help you avoid any possible legal action." (Compl. Ex. 1.) "[T]he Court fails to see – and plaintiff does not plausibly plead – how the least sophisticated consumer could reasonably believe legal action to be imminent if such action is not even certain to be taken." *Rosenberg v. Client Servs., Inc.*, No. 19-CV-6181, 2020 WL 2732017, at *4 (S.D.N.Y. May 26, 2020).

Another judge of this Court has reached the same conclusion, finding that a CSI letter with an identical validation notice and legal action notice did not violate §§ 1692e or 1692g. *Id.* at *1, 4-7. In ruling that the least sophisticated consumer could not "reasonably believe legal action to be imminent" from the letter, Judge Briccetti noted that the words "if" and "possible" in the notice implied that legal action was not certain to take place. *Id.* at *4.[2] Further, the validation notice in *Rosenberg* appeared "on the same page in the same size and typeface as the

---

[2] Plaintiff focuses on the word "will," (P's Opp. at 6, 14, 16-17), but ignores the fact that what the Letter says "will" happen – only if a payment plan cannot be worked out – is that the creditor "will" send the account for "possible" legal action. (Compl. Ex. 1.) Plaintiff likewise ignores the plain import of the Letter's statements that a decision to initiate legal action has not been made and that the Letter presents an opportunity to avoid legal action. (*Id.*)

allegedly overshadowing language," *id.* at *6, as it does here, (*see* Compl. Ex. 1).  In addition,

the letter in *Rosenberg*, like the one here, did "not contain any deadline that could arguably have

confused the consumer as to the thirty-day dispute period."  *Rosenberg*, 2020 WL 2732017, at

*6.  Indeed, there is no meaningful difference between the letter in *Rosenberg* and the letter in

this case.

Plaintiff argues that the *Rosenberg* court improperly found that the letter did not threaten

legal action, noting that it failed to contain "transitional language to indicate that the alleged

Debt would not be referred out for legal action in the event that Plaintiff disputed the alleged

Debt."  (P's Opp. at 16.)  The court in *Rosenberg* found, and I agree, that transitional language

was not required between the validation notice and the legal action notice.  *See Rosenberg*, 2020

WL 2732017, at *6-7.  Where other courts in this circuit have found that transitional language

was required, the letters in those cases had different contents than the one at issue here.  *See*

*Savino v. Comput. Credit, Inc.*, 164 F.3d 81, 84-86 (2d Cir. 1998); *Unger v. Nat'l Revenue Grp.*,

No. 99-CV-3087, 2000 WL 1897346, at *3 (E.D.N.Y. Dec. 8, 2000).

For instance, the Second Circuit has required transitional language in between a

statement on the letter's front side that an entity "insists on immediate payment or a valid reason

for your failure to make payment" and the validation notice on the letter's back side.  *Savino*,

164 F.3d at 84-86.  There is no such request for immediate payment on the letter sent by

Defendant, and the validation notice in the Letter here is printed on its front side.  (*See* Compl.

Ex. 1.)  Transitional language has also been required where the validation notice is printed in

smaller, less apparent typeface, and "physically separated from the erroneous statement that

payment in full was 'due now.'"  *See Unger*, 2000 WL 1897346, at *3.  In this case, however,

the legal action notice is printed immediately under the validation notice in the same size and

font as the validation notice, and there is no erroneous statement that payment is "due now" in full.  (*See* Compl. Ex. 1.)

Considering these facts, I agree with Judge Briccetti that transitional language is not required.  There is no misleading impression that needs to be corrected with transitional language.  While Plaintiff argues that *Rosenberg* "did not answer the question of where the proverbial line must be drawn," (P's Opp. at 17), it did not have to, because the letter before it did not violate the FDCPA.  *Rosenberg*, 2020 WL 2732017, at *2.   Likewise here, I find that the Letter did not threaten immediate or imminent legal action against Plaintiff in violation of §§ 1692e or 1692g, or otherwise overshadow or dilute the validation notice.

### 4.    Multiple Addresses

In his second claim, Plaintiff alleges that the Letter fails to instruct the least sophisticated consumer as to which address disputes must be sent and therefore overshadows and is inconsistent with Plaintiff's rights under §§ 1692e and 1692g.  (Compl. ¶¶ 94, 109-114.) Defendant argues that the Letter does not violate the FDCPA because it "makes it clear to the least sophisticated consumer that all correspondences including written disputes should be directed to CSI's office address."  (D's Mem. at 19.)

There are two addresses for CSI on the Letter:  one is an office street address, printed in the top left of the Letter and on the bottom right of the payment coupon, and the other is a P.O. Box address, printed on the upper left of the payment coupon.  (Compl. Ex. 1.)  The Letter clearly explains where consumers should direct correspondence.  The validation notice explains that Defendant will assume the debt to be valid unless the consumer "notif[ies] our office" of a dispute, and the payment coupon directs the consumer to "remit [checks] to" CSI's office address.  (*See id.*)  The Harry S Truman Blvd. street address is the only office address provided,

and the only office to which the consumer is directed.  Courts in this circuit have held that the inclusion of a debt collector's physical and P.O. Box addresses "would not confuse the least sophisticated consumer," particularly where consumers are explicitly directed to only one address.  *Nunez v. Mercantile Adjustment Bureau, LLC*, No. 19-CV-02962, 2020 WL 2475619, at *8 (E.D.N.Y. May 13, 2020) (citing *Gansburg v. Credit Control, LLC*, No. 18-CV-5054, 2020 WL 1862928, at *1 (E.D.N.Y. Feb. 27, 2020)); *see Park v. Forster & Garbus, LLP*, No. 19-CV-3621, 2019 WL 5895703, at *6 (E.D.N.Y. Nov. 12, 2019); *Saraci v. Convergent Outsourcing, Inc.*, No. 18-CV-6505, 2019 WL 1062098, at *3-4 (E.D.N.Y. Mar. 6, 2019).

Plaintiff argues that the Letter does not direct the consumer to send *correspondence* to the office address; it only directs the consumer to *remit checks* to this address.  (P's Opp. at 18.)  But Plaintiff ignores that the Letter directs correspondence to "our office," which is plainly the street address, not the P.O. Box.  Further, even if that direction did not appear, the least sophisticated consumer would know to mail correspondence to the address to which the letter directs payment to be sent.  *See Saraci*, 2019 WL 1062098, at *1, 3-4 (letter that directs consumers to mail *payment* to one address, appearing in multiple places on the letter, was sufficient to direct consumers to mail their written *disputes* to this office, despite another address appearing on the letter once).

There are other considerations that suggest that the least sophisticated consumer would know where to send correspondence.  The office's street address is listed twice, whereas the P.O. Box address is only listed once, and no reference to the P.O. Box is made.  The office's physical address is the first address that the consumer sees when reading the letter, and it is provided below the name of Defendant's company and next to office hours and a telephone phone number, making clear that it is a physical location at which correspondence can be received.  *See Saraci,*

2019 WL 1062098, at *3 ("It would be an idiosyncratic reading of the collection letter to think

that the PO Box listed once under 'ATERSO01' could be the correct 'office' address rather than

the Renton, Washington address, which consistently appears under the name of defendant's

company.  Indeed, the Renton, Washington address is even listed next to defendant's office

hours and telephone number, providing further support that this address is correct.").

In arguing that the inclusion of multiple addresses was misleading and confusing,

Plaintiff relies on Judge Pollak's discussion in *Pinyuk v. CBE Group, Inc.*, No. 17-CV-5753,

2019 WL 1900985 (E.D.N.Y. Apr. 29, 2019).  (P's Opp. at 18-19).  There are, however, key

differences between this case and *Pinyuk*.  For one, the letter in *Pinyuk* contained three addresses

for the debt collector, including two different P.O. Box addresses.  *Pinyuk*, 2019 WL 1900985, at

*7.  In contrast, the letter here contains two addresses for CSI and only one is a P.O. Box

address.  (*See* Compl. Ex. 1.)  Furthermore, the letter in *Pinyuk* did not direct the consumer to

any particular address.  *Pinyuk*, 2019 WL 1900985, at *7.  Here, Plaintiff is directed to the street

address.  (*See* Compl. Ex. 1.)  In another case where the court found the inclusion of multiple

addresses misleading or confusing, the letter directed the consumer to multiple addresses (one of

which was the incorrect address).  *See Carbone v. Caliber Home Loans*, No. 15-CV-4919, 2016

WL 8711197, at *4 (E.D.N.Y. Sept. 30, 2016).  In this case, Plaintiff is only directed to one

address, which is the correct address to which to send disputes.  (Compl. Ex. 1.)  For these

reasons, I do not find that the letter misleads or confuses the least sophisticated consumer as to

where disputes must be sent, and it therefore does not violate § 1692e or § 1692g.

### C.    Leave to Amend

Leave to amend a complaint should be freely given "when justice so requires."  Fed. R.

Civ. P. 15(a)(2).  "[I]t is within the sound discretion of the district court to grant or deny leave to

amend." *Kim v. Kimm*, 884 F.3d 98, 105 (2d Cir. 2018) (cleaned up).   "Leave to amend, though

liberally granted, may properly be denied" for "'futility of amendment,'" among other reasons.

*Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S.

178, 182 (1962)).   "Amendment is futile when the problem with a plaintiff's causes of action is

substantive and better pleading will not cure it."   *Trombetta v. Novocin*, 414 F. Supp. 3d 625,

634 (S.D.N.Y. 2019) (cleaned up).

Plaintiff has already had a chance to amend his complaint after having the benefit of a

pre-motion letter from Defendant outlining the proposed grounds for dismissal, (Doc. 12), and

the discussion at the June 22, 2020 pre-motion conference, (Minute Entry dated June 22, 2020).

In general, a plaintiff's failure to fix deficiencies in the previous pleading, after being provided

notice of them, is alone sufficient ground to deny leave to amend.   *See Nat'l Credit Union*

*Admin. Bd. v. U.S. Bank Nat'l Ass'n*, 898 F.3d 243, 257-58 (2d Cir. 2019) ("When a plaintiff was

aware of the deficiencies in his complaint when he first amended, he clearly has no right to a

second amendment even if the proposed second amended complaint in fact cures the defects of

the first.   Simply put, a busy district court need not allow itself to be imposed upon by the

presentation of theories *seriatim*.") (cleaned up); *In re Eaton Vance Mut. Funds Fee Litig.*, 380

F. Supp. 2d 222, 242 (S.D.N.Y. 2005) (denying leave to amend because "the plaintiffs have had

two opportunities to cure the defects in their complaints, including a procedure through which

the plaintiffs were provided notice of defects in the Consolidated Amended Complaint by the

defendants and given a chance to amend their Consolidated Amended Complaint," and

"plaintiffs have not submitted a proposed amended complaint that would cure these pleading

defects"), *aff'd sub nom. Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 118 (2d Cir. 2007) (*per*

*curiam*) ("[P]laintiffs were not entitled to an advisory opinion from the Court informing them of

the deficiencies in the complaint and then an opportunity to cure those deficiencies.") (cleaned up).

Further, Plaintiff has not requested leave to amend or suggested that he is in possession of facts that would cure the deficiencies identified in this opinion. Indeed, "[t]he problem[s] with [Plaintiff's] causes of action [are] substantive," and "better pleading will not cure [them]." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000). Accordingly, the Court declines to grant leave to amend *sua sponte*. *See TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (plaintiff need not be given leave to amend if he fails to specify how amendment would cure the pleading deficiencies in his complaint); *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (district court did not err in dismissing claim with prejudice in absence of any indication plaintiff could or would provide additional allegations leading to different result); *Horoshko v. Citibank*, *N.A.*, 373 F.3d 248, 249-50 (2d Cir. 2004) (*per curiam*) (district court did not abuse its discretion by not granting leave to amend where there was no indication as to what might have been added to make the complaint viable and plaintiffs did not request leave to amend); *Kropelnicki v. Siegel*, 290 F.3d 118, 131 (2d Cir. 2002) (district court did not abuse its discretion by not granting leave to amend where there were "no possible set of facts relating to [a debt collection] letter that [plaintiff] could plead that would state a claim").

IV.     **CONCLUSION**

For the foregoing reasons, Defendant's motion for judgment on the pleadings is

GRANTED.  The Clerk of Court is respectfully directed to terminate the pending motion, (Doc.

17), and close the case.

**SO ORDERED.**

Dated: May 7, 2021
       White Plains, New York

_____

CATHY SEIBEL, U.S.D.J.



# APPENDIX

Office Hours (Central Time)
Monday-Thursday: 8am-8pm
Friday: 8am-5pm
Saturday: 7am-11am
Sunday: Closed

3451 Harry S Truman Blvd.
Saint Charles, MO 63301-4047

CURRENT CREDITOR: CAPITAL ONE BANK (USA), N.A.
ACCOUNT NUMBER: XXXXXXXXXXXX1601
BALANCE DUE: $1,070.70
REFERENCE NUMBER: ███3509

PHONE: 877-665-3303

DATE: 3/4/2019

## NEW INFORMATION ON YOUR ACCOUNT

Dear Valued Customer:

Our client, CAPITAL ONE BANK (USA), N.A., has placed the above account with our organization for collections.

Balance Due At Charge-Off:  $1,070.70
Interest:  $0.00
Other Charges:  $0.00
Payments Made:  $0.00
**Current Balance:**  **$1,070.70**

Unless you notify our office within thirty (30) days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within thirty (30) days from receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request of this office in writing within thirty (30) days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

Please note, we have many payment options that may meet your individual needs. If we are unable to arrange repayment, Capital One will send your account to an attorney in your state for possible legal action. Please note, no decision has been made to take legal action against you at this time. I want to help you avoid any possible legal action. Please call me at 877-665-3303 for more information. I look forward to working with you to resolve this balance.

Joshua Pinkowski
Client Services, Inc.

THIS COMMUNICATION IS FROM A DEBT COLLECTOR. THIS IS AN ATTEMPT TO COLLECT A DEBT.
ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

FOR IMPORTANT RIGHTS AND PRIVILEGES WHICH MIGHT APPLY TO YOUR STATE OF RESIDENCE,
PLEASE SEE BELOW OR REVERSE SIDE (IF FAXED THEN FOLLOWING PAGE).

PO Box 1586
Saint Peters, MO 63376

| REFERENCE NUMBER | ███3509 |
| --- | --- |
| AMOUNT ENCLOSED | |



Checks Payable To: Client Services, Inc.

SHLOMO GREIFMAN
18 HARRISON LN
SPRING VALLEY NY 10977-1920

REMIT TO:

CLIENT SERVICES, INC.
3451 HARRY S. TRUMAN BLVD
ST. CHARLES MO 63301-4047

1 of 2

118666-645-CAP809LR



**client**
SERVICES
INCORPORATED

3451 Harry S Truman Blvd.
Saint Charles, MO 63301-4047
CURRENT CREDITOR: CAPITAL ONE BANK (USA), N.A.
ACCOUNT NUMBER: XXXXXXXXXXXX1601
BALANCE DUE: $1,070.70
REFERENCE NUMBER: ██████3509

<u>Office Hours (Central Time)</u>
Monday-Thursday: 8am-8pm
Friday: 8am-5pm
Saturday: 7am-11am
Sunday: Closed

PHONE: 877-665-3303

DATE: 3/4/2019

**NEW INFORMATION ON YOUR ACCOUNT**

 Send your payment in the enclosed envelope using the remittance coupon below.

Pay-by-Phone: 1-877-552-5905

 Online: www.csiconsumercenter.com

 If you are unable to pay the balance in full, contact our office at 877-665-3303 for payment options, which may be available to you.

PO Box 1586
Saint Peters, MO 63376

| REFERENCE NUMBER | ██████3509 |
| --- | --- |
| AMOUNT ENCLOSED | |

**Checks Payable To: Client Services, Inc.**

SHLOMO GREIFMAN
18 HARRISON LN
SPRING VALLEY NY 10977-1920

**REMIT TO:**

CLIENT SERVICES, INC.
3451 HARRY S. TRUMAN BLVD
ST. CHARLES MO 63301-4047

118666-646-CAP809LR